IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND G. PERELMAN,           :      CIVIL ACTION
                               :      NO. 12-7071
          Plaintiff,           :
                               :
     v.                        :
                               :
ARLIN ADAMS,                   :
                               :
          Defendant.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 21, 2013


          Plaintiff Raymond G. Perelman ("Plaintiff") brings

this action against his former lawyer and friend, Defendant

Arlin Adams ("Defendant"), in connection with a series of

business transactions that took place in January 1990.[1] Plaintiff

filed his complaint on September 14, 2012 in the United States

District Court for the Southern District of Florida. Def.'s Mot.

to Dismiss 11, ECF No. 13. A joint motion to transfer the case

to the Eastern District of Pennsylvania was granted on December

18, 2012. Order Granting Joint Mot. to Transfer, Dec. 18, 2012,

ECF No. 1. Plaintiff filed an amended complaint on January 22,

_____

[1]      The Court notes at the outset that Plaintiff has
withdrawn Counts VI, VII, and VIII of the amended complaint,
which relate to the drafting and execution of Ruth Perelman's
2010 will. Pl.'s Resp. 19, ECF No. 16. The Court will not recite
the facts surrounding these Counts as they are now irrelevant to
the current action.

2013. Am. Compl., ECF No. 8. Defendant filed a motion to dismiss on February 21, 2013. Def.'s Mot. to Dismiss, ECF No. 13. This motion is now ripe for disposition.

## I.    FACTUAL BACKGROUND[2]

### A.    The 1990 Transactions

In the late 1980s, Plaintiff owned a number of businesses, which he operated with his son, Jeffrey Perelman. Am. Compl. ¶ 5. In 1989, Jeffrey resigned from his position in Plaintiff's companies, over a disagreement with his father. Id. After consulting his wife and Defendant, who was Plaintiff's legal counsel, Plaintiff agreed to transfer thirteen subsidiary companies (the "Companies") to Jeffrey under certain material conditions. Id. ¶ 7. Principal among the conditions for this transfer was that half of the stock in the Companies was to be transferred to a trust for the benefit of Plaintiff's granddaughter, Alison Perelman, and that Defendant was to be trustee. Id. In addition, Jeffrey's wife, Marsha, was to renounce any interest in the Companies to be sold to Jeffrey. Id.

Defendant is a lawyer who at all relevant times was an

---

[2]       The facts set forth herein are taken from the amended complaint and viewed in the light most favorable to Plaintiff.

employee[3] of the law firm Schnader, Harrison, Segal & Lewis LLP

(the "Schnader Firm"). Plaintiff alleges that Defendant, in his

capacity as a lawyer, drafted or caused to be drafted by another

lawyer of the Schnader Firm, the pertinent agreements to

transfer the Companies to Jeffrey and to create a trust (the

"Agreements"). Pl.'s Resp. 3, ECF No. 16. According to the

amended complaint, Defendant also acted as counsel for both

sides of the transaction, simultaneously representing Plaintiff

and his son Jeffrey. Id. at 17. The Agreements provided that

Jeffrey was required to pay approximately $24 million in a

certified check (or checks) to Plaintiff at the closing of the

transaction. Id. at 16. Plaintiff states that at the time of

closing, he was in Florida and therefore relied upon Defendant

to see that the transaction was properly executed. Id. On

January 24, 1990, Jeffrey and Defendant, acting as trustees,

executed an Agreement of Trust for the Jeffrey E. Perelman Trust

(the "Trust"). Mot. to Dismiss 6. The Trust agreement did not

provide for half of the stock of the Companies to be held for

the benefit of Alison. Marsha also executed a Renunciation

Agreement on this date. Id.

Plaintiff alleges that Jeffrey took possession of the

Companies on the date of closing without delivering Plaintiff

---

[3]      Plaintiff contends and Defendant agrees that he was
not a general partner of the Schnader Firm.

the purchase price as listed in the purchase agreements. Am. Compl. ¶ 13. He states that as of the date of the filing of the amended complaint, Jeffrey had never paid the required consideration of $24 million. Id. ¶ 14. Furthermore, the Trust which Plaintiff had intended to be set up for the benefit of his granddaughter was instead set up exclusively for the benefit of Jeffrey. Id. ¶ 19.

Plaintiff states that only after receiving a copy of the Agreements and other documents relating to the sale of the Companies, and conducting an investigation in 2010, did he become aware that Jeffrey had taken over the Companies without ever delivering the $24 million, and that half of the stock of the Companies was not put into the Trust for the benefit of his granddaughter as he had intended. Pl.'s Resp. 4.

Plaintiff now brings suit on the basis of these two alleged injuries. He raises five counts against Defendant: (1) breach of contract; (2) professional negligence; (3) fraudulent misrepresentation; (4) fraudulent concealment; and (5) fraud.

B.   Litigation History

Before proceeding to the merits of Plaintiff's claims, it is worth summarizing the four other legal actions,[4] in which

---

[4]      The Court may take judicial notice of these matters of public record. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999)

Plaintiff was involved, pertaining to the transactions at issue in this case.

    1.    <u>Raymond G. Perelman v. Jeffrey E. Perelman</u>, October Term 2009, No. 2442 (Phila. Com. Pl. October 4, 2010), aff'd 34 A.3d 213 (Pa. Super 2011), allocator denied 42 A.3d 294 (Pa. 2012) (hereinafter the "First Philadelphia County Action")

In October 2009, Plaintiff commenced an action against Jeffrey for fraud and breach of contract, alleging that the 1990 Trust and Marsha's Renunciation Agreement did not comport with the terms of an oral agreement he had had with his son. Mot. to Dismiss 6. Plaintiff did not allege that Jeffrey had failed to pay the $24 million purchase price contained in their stock purchase agreement. <u>Id.</u> The trial court dismissed Plaintiff's complaint with prejudice, stating that application of the parol evidence rule precluded his claims against Jeffrey. <u>Id.</u> at 7. The Superior Court of Pennsylvania affirmed the decision and the Supreme Court of Pennsylvania denied allocator. <u>Id.</u>

    2.    <u>Jeffrey E. Perelman v. Raymond G. Perelman</u>, No. 09-4792 (E.D. Pa.) (hereinafter the "First Federal Action")

Immediately before Plaintiff filed his first lawsuit in state court, Jeffrey commenced an action in federal court seeking a declaration that Plaintiff had no viable claims

("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

against him relating to the 1990 transactions. Mot. to Dismiss 7. Plaintiff filed counterclaims against Jeffrey, seeking, among other things, to reform the Trust. Id. Judge McLaughlin stayed the action, pending a decision from the Superior Court in the First Philadelphia County Action. Id. Upon the resolution of the state court action, Judge McLaughlin lifted the stay and ruled on pending motions. Perelman v. Perelman, No. 09-4792, 2013 WL 1842234 (E.D. Pa. May 2, 2013). She granted Jeffrey's motion to dismiss Plaintiff's counterclaims on the grounds of collateral estoppel, and dismissed his declaratory judgment claim as moot. Id. at *5-*7.

3. Raymond G. Perelman v. Schnader Harrison Segal & Lewis LLP et al., December Term 2009, No. 0977 (Phila. Com. Pl. Oct. 4, 2010), aff'd 34 A.3d 213 (Pa. Super. 2011) (herein after the "Second Philadelphia County Action")

In December 2009, Plaintiff filed a malpractice action against the Schnader Firm for its failure to structure the 1990 transactions in a way that effectuated his intentions regarding Alison's interest in the Trust and Marsha's renunciation. Am. Compl. Ex. K. Plaintiff asserted claims for legal malpractice, breach of contract, and breach of fiduciary duty. Id. ¶¶ 33-48. Plaintiff's complaint did not allege that Jeffrey had not paid the $24 million purchase price. See id.

The trial court granted the Schnader Firm's motion for judgment on the pleadings based on the expiration of the

applicable statute of limitations, finding that the alleged deficiencies in the documents prepared "appeared clearly on the face of the documents." Mot. to Dismiss, Ex. J, <u>Perelman v. Schnader Harrison Segal & Lewis LLP</u>, December Term 2009, No. 0977, at 8 (Phila. Com. Pl. Oct. 4, 2010). The Superior Court affirmed and Plaintiff did not seek allocator. Mot. to Dismiss 8.

        4.   <u>In re: Jeffrey E. Perelman Trust</u>, No. 2011-X2850 (Montg. Com. Pl., Orphans' Div. July 26, 2012) (herein after the "Montgomery County Orphans' Court Action")

Before the Superior Court affirmed the trial court's dismissal of Plaintiff's two state court cases, Plaintiff commenced an action in the Montgomery County Orphans' Court. Mot. to Dismiss 9. On August 11, 2011, Plaintiff filed a petition to revoke, or revise and reform the Trust, naming Jeffrey and Defendant, among others, as respondents. <u>Id.</u> In this action, Plaintiff alleged that Jeffrey had never paid the $24 million purchase price. <u>Id.</u> Jeffrey and Defendant moved for judgment on the pleadings and the court granted both motions, holding that Plaintiff's petition was barred by the outcome of the litigation in Philadelphia County. <u>Id.</u>

## II. LEGAL STANDARD

In considering a motion to dismiss for failure to

state a claim upon which relief can be granted under Federal
Rule of Civil Procedure 12(b)(6), the court must "accept as true
all allegations in the complaint and all reasonable inferences
that can be drawn therefrom, and view them in the light most
favorable to the non-moving party." DeBenedictis v. Merrill
Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal
citations omitted). In order to withstand a motion to dismiss, a
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Id. at 555 (internal
citation omitted). Although a plaintiff is entitled to all
reasonable inferences from the facts alleged, a plaintiff's
legal conclusions are not entitled to deference and the court is
"not bound to accept as true a legal conclusion couched as a
factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986)
(cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual
allegations so as to state a facially plausible claim for
relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583
F.3d 187, 190 (3d Cir. 2009). A claim possesses such
plausibility "'when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The Third Circuit "permits a [statute of] limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). Where the Complaint facially shows noncompliance with the applicable statute of limitations, a motion to dismiss on this ground should be granted. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint on the grounds that Plaintiff's claims are time-barred and barred

under the doctrine of res judicata. In conducting its analysis, the Court divides Plaintiff's claims based on the underlying injury asserted: (1) that Plaintiff never received $24 million from Jeffrey, and (2) that Alison was not named a beneficiary of the Trust. The Court finds all of Plaintiff's claims to be precluded, but reaches this conclusion through two separate paths of analysis. The Court begins by describing the relevant statutes of limitations and then examines each category of claims independently of each other.

A.    Statutes of Limitations

Federal courts sitting in diversity treat statutes of limitations as substantive, and therefore are bound by the applicable state law. Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007). In this case, Pennsylvania law supplies the rule of decision.

Plaintiff's tort claims – Count II for professional negligence, Count III for fraudulent misrepresentation, Count IV for fraudulent concealment, and Count V for fraud – are governed by a two year statute of limitations. See 42 Pa. C.S. § 5524 (2013). Plaintiff's Count I breach of contract claim is governed by a four-year limitations period. See 42 Pa. C.S. § 5525 (2013). Pennsylvania courts favor the strict application of statutes of limitations. See Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441 (Pa. Super. 2003), aff'd per curiam, 881 A.2d

1266 (Pa. 2005).

Under Pennsylvania law, as a general rule, "the
statute of limitations begins to run as soon as the right to
institute and maintain a suit arises." Fine v. Checcio, 870 A.2d
850, 857 (Pa. 2005) (citing Pocono Int'l Raceway, Inc., 468 A.2d
468, 471 (Pa. 1983)). Breach of contract claims begin to accrue
on the date of the breach. Parker Soc'y Hill Travel Agency, Inc.
v. Presbyterian Univ. of Pa. Med. Ctr., 635 A.2d 649, 652 (Pa.
Super. 1993). Professional negligence claims begin to accrue
upon the occurrence of the breach of a duty. Wachovia Bank, N.A.
v. Ferretti, 935 A.2d 565, 574 (Pa. Super. 2007). Finally, a
claim of fraud begins to accrue when a party knew or should have
reasonably known of the injury and its cause. Fine, 870 A.2d at
861.

In this case, it is clear that the breach of contract,
the breach of duty, and the injury at issue in Plaintiff's claim
of fraud, all occurred in 1990, during the negotiation and
execution of the Agreements. Plaintiff argues, however, that the
applicable limitations periods should be tolled on the basis of
the discovery rule and the doctrine of fraudulent concealment.
The Court now considers the applicability of these tolling
mechanisms with respect to Plaintiff's claims concerning the
payment of $24 million by Jeffrey.

B.  Claims Concerning Payment of $24 Million

Plaintiff claims that only in 2010 did he discover that he never received the $24 million he was allegedly entitled to under the Agreements. Pl.'s Resp. 6. He argues that the statutes of limitations should be tolled between 1990 and 2010. Id. Plaintiff relies on the discovery rule and the doctrine of fraudulent concealment to support his claim.

1.  The Discovery Rule

The Pennsylvania discovery rule "arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause." Colonna v. Rice, 664 A.2d 979, 980 (Pa. Super. 1995). In these instances, the statute of limitations is tolled until the plaintiff learns of the injury. "The discovery rule focuses not on the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." Mest v. Cabot Corp., 449 F.3d 502, 511 (3d Cir. 2006) (citations and quotations omitted). A plaintiff seeking to apply the discovery rule bears the burden of showing that he exercised reasonable diligence in determining the existence and the cause of his injury. Id. "To demonstrate reasonable diligence, a plaintiff must establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of

its members." Id. (quotations omitted).

In invoking the rule of discovery, Plaintiff appears to argue that because he was so wealthy, he could not be expected to notice the absence of $24 million. He states, "[w]hile for most the absence of $24 million would cause immediate concern, Raymond Perelman has achieved a level of financial success where the amount was not a large percentage of his total net worth." Pl.'s Resp. 7. Even if true, this argument focuses on Plaintiff's subjective state of mind. Given the objective nature of the reasonable diligence inquiry, see Kach v. Hose, 589 F.3d 626, 642 n.17 (3d Cir. 2009), this argument is unavailing. Apparently recognizing the weakness of this argument, Plaintiff turns to the doctrine of fraudulent concealment to toll the statute of limitations.

## 2. Fraudulent Concealment

The doctrine of fraudulent concealment applies where a defendant has, through fraud or concealment, "cause[d] the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts," such that he is unable to discover his injury or its cause. Fine, 870 A.2d at 860. "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and

13

convincing evidence." Id. The plaintiff must show that the defendant committed an affirmative act of concealment upon which the plaintiff justifiably relied. Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 278 (Pa. Sup. Ct. 2005). "Like the discovery rule, the fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission. Where common sense would lead the plaintiff to question a misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation." Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir. 2006) (citation omitted).

Plaintiff argues that in the context of a fiduciary relationship between parties, such as in this case where Defendant acted as his lawyer, the statute of limitations is tolled, where there is fraud alleged and there is an effort to cover up the fraud by the agent, in this case his lawyer. Pl.'s Resp. 8. Plaintiff points to Schwartz v. Pierucci, in arguing that "absent a disclosure [by the fiduciary], the fiduciary commits an act of continual [sic] covering up of the fraud." 60 B.R. 297, 403 (E.D. Pa. 1986). Plaintiff avers that because Defendant did not affirmatively disclose to him the alleged fraud, that is, that he did not receive the $24 million at closing, the statute of limitations should be tolled until he

discovered that the money had not been paid, which in this case was at least twenty years from the date of injury. Pl.'s Resp. 8-9. The Court disagrees with Plaintiff's reliance on Schwartz.

In Schwartz, the court did not hold that only a disclosure by a fiduciary stops the tolling of the statute of limitations. Rather, the court stated that under the circumstances present there, there was a question of fact as to whether a bankruptcy trustee could not have discovered that there was a cause of action against a Savings and Loan Association because of the ongoing fraud of the principals. 60 B.R. at 403. Specifically, the court held that two letters sent to the trustee from the counsel for third party creditors could have triggered the trustee's duty to investigate. Id. at 402. This question was left for the jury to decide. Id.

In Gurfein v. Sovereign Group, the plaintiffs, like Plaintiff in this case, argued that in the context of a fiduciary relationship, the cause of action does not accrue until the plaintiff has actual knowledge of the injury. 826 F. Supp. 890, 918 (E.D. Pa. 1993). The plaintiffs similarly relied on Schwartz to make their argument. Id. Judge Pollak explained that Schwartz actually was contrary to the plaintiff's position, because the court had held that "a question of fact remained as to whether certain events triggered the plaintiff's duty to inquire and thus commenced the statute of limitations." Id.

Thus, rather than creating an automatic and continuing exception to the discovery rule until the fiduciary had disclosed the fraud, "the presence of a fiduciary relationship would be pertinent to the question of <u>when</u> a plaintiff's duty to investigate arose." <u>Id.</u> at 919 n.31 (citations omitted) (emphasis added).

This interpretation of <u>Schwartz</u> was adopted by the Third Circuit in <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d 325, 342 (3d Cir. 2004) (citing favorably <u>Gurfein</u>'s analysis of <u>Schwartz</u>). There, the court held that a question of fact existed as to whether, in light of the fiduciary relationship between a Chapter 11 debtor-in possession and its counsel, the debtor had exercised reasonable diligence in entrusting administration of estate funds to its counsel and in failing to discover its counsel's embezzlement. <u>Id.</u> at 343. Echoing <u>Gurfein</u>, the court held, "the existence of a fiduciary relationship is relevant to a discovery rule analysis precisely because it entails such a presumptive level of trust in the fiduciary by the principal, that it may take a 'smoking gun' to excite searching inquiry on the principal's part into its fiduciary's behavior." <u>Id.</u> at 343. Thus, the rule that emerges from these cases is that while a fiduciary relationship relaxes the duty of diligence, subsequent events, other than the fiduciary's disclosure of the fraud, may put the principal on notice of the need for an increased level

of inquiry. Such is the case here.

First, in Plaintiff's amended complaint, there are only vague allegations regarding oral assurances provided by Defendant "prior to . . . and subsequent to" the 1990 transaction that "Jeffrey Perelman would pay $24 million by certified check to Plaintiff at the closing for [the] transaction." Am. Compl. ¶ 61; see also id. ¶¶ 77, 82, 87 (describing vague assurances provided by Defendant). Plaintiff does not provide the date of any of these statements or provide specific allegations of what Defendant said. The only concrete statement that Plaintiff points to is a letter dated October 22, 1991 sent from Defendant to Plaintiff and his wife (the "Letter"). Am. Compl., ex. F. The Letter was written in response to Plaintiff's concern that a management company, set up to operate the thirteen companies created in the 1990 transaction, was siphoning off the profits of the Companies, and keeping those funds out of the Trust. Id. ¶ 20. The Letter states:

> First, let me say that I had not understood that Vicki Waitsman set up JEP Management. The purpose primarily was to handle the overhead incurred in operating the various divisions. JEP is owned half by Allison's trust and half by Jeffrey, just as Dentalez is. Also, it is the unit that pays the overhead of the various companies, including Jeffrey's salary, which has been raised by only $5,000 since it was fixed four years ago by Raymond. It is also the unit which pays the interest on the loans incurred when Jeffrey took over the operation.

Id. ex. F. The Letter does not satisfy Plaintiff's burden to

17

show that Defendant engaged in an affirmative act of concealment. On its face, the Letter says nothing about whether the promised payment of the $24 million for the Companies had been or would be made to Plaintiff.

Second, even if the Letter had assured Plaintiff that the payment had been made, such assurances do not extend beyond 2007 when Plaintiff became aware, "following some unusual behavior by Jeffrey Perelman," (not described in the amended complaint), that Alison had not been named the beneficiary of half of the Company's stock in the Trust agreement. Am. Compl. ¶ 22. Plaintiff himself states that upon receipt and review of the Trust agreement, "he was shocked and dismayed to discover that his granddaughter [Alison] was not specifically provided for in the trust." Id. ¶ 23.

Plaintiff argues, however, that he only received the Agreements (other than the Trust agreement) in 2010, and that it was then that he first discovered that the $24 million payment had never been made. Id. ¶ 24. Plaintiff does not aver that he requested or took any action to obtain and review the Agreements earlier; nor does he claim that Defendant or Jeffrey Perelman refused to provide or delayed the production of the Agreements until 2010. A reasonable person, "shocked and dismayed" by the discovery in 2007 that an important and substantial provision relating to the family trust had not been included, would have

requested and reviewed the Agreements with dispatch to ensure that his intended terms, including the $24 million payment, had been met in a closely related transaction. At this point, if not earlier, Plaintiff was on notice of the need for a "searching inquiry" into his fiduciary's actions. See In re: Mushroom Transp. Co., Inc., 382 F.3d at 343. Plaintiff's conduct between 2007 and 2010 did not satisfy this duty of inquiry. Therefore, at the absolute latest, the statute of limitations on Plaintiff's claims began to run in 2007.

Given the circumstances, the limitations period to bring Counts II through V therefore would have expired in 2009, and the period to bring Count I would have expired in 2011. Plaintiff, having filed his complaint in September 2012, is therefore time-barred from bringing any claims relating to the non-payment of the $24 million from the 1990 transaction with his son.

C.     Claims Regarding the Failure to Designate Alison as a
       Beneficiary of the Trust

Under the same analysis applied above to the $24 million missing payment, the statute of limitations would bar Plaintiff's claims relating to the failure to designate Alison as a beneficiary of the Trust. However, the Court need not address this claim here because the claim has already been litigated. Accordingly, all of Plaintiff's claims regarding the

Trust are precluded under the doctrine of res judicata, or claim
preclusion, as they were litigated between the Schnader Firm,
Defendant's employer, and Plaintiff in the Second Philadelphia
County Action.

The doctrine of res judicata requires federal courts
to give state court judgments the same preclusive effect that
the issuing state courts would give them, and therefore requires
the federal courts to apply the state court's law of preclusion.
Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523
(1986). The parties agree that in this case, Pennsylvania's law
of preclusion applies.

"Under Pennsylvania law, the doctrine of res judicata
holds that a final valid judgment upon the merits by a court of
competent jurisdiction bars any future suit between the parties
or their privies, on the same cause of action." Allegheny
Intern., Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 14,
29 (3d Cir. 1994) (internal quotations and citations omitted).
Res judicata bars not only claims actually litigated in prior
proceedings, but also claims which could have been litigated
because they arose out of the same transaction or series of
transactions. Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169,
174 (3d Cir. 2009) ("A claim extinguished by res judicata
'includes all rights of the plaintiff to remedies against the
defendant with respect to all or any part of the transaction or

series of connected transactions*,* out of which the action arose.'") (citation omitted); Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007). Application of the doctrine, "does not depend on the specific legal theory invoked, but rather the essential similarity of the underlying events giving rise to the various claims." Elkadrawy, 584 F.3d at 173.

Generally, parties are considered to be in privity if one is vicariously responsible for the conduct of another, such as a principal and an agent. Day v. Volkswagenwerk Aktiengesellschaft, 318 Pa. Super. 225, 234 (1983) (finding principals and agents to be parties in privity for purposes of applying principles of res judicata). In this case, it is undisputed that at all relevant times, Defendant was an employee of the Schnader Firm. As such, Defendant was in privity with it.[5]

---

[5]     Plaintiff argues that because Adams was not a general partner of the firm, there is no privity. Pl.'s Resp. 16. He points to Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., to identify six categories where privity has been found to exist:

　　1) the nonparty agrees to be bound by the determination of issues in an action between others;

　　2) a substantive legal relationship—i.e. traditional privity—exists that binds the nonparty;

　　3) the nonparty was 'adequately represented by someone with the same interests who [wa]s a party';

　　4) the nonparty assumes control over litigation in which the judgment is rendered;

Plaintiff argues that while that may be the case in general, here, Defendant was acting outside the scope of his employment with the Schnader Firm. Pl.'s Resp. 18; see Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993) ("Before a defendant law firm can be held liable for the tortious or negligent conduct of one of its attorneys, it must be established the attorney/employee was acting within the scope of his employment."). This is so, Plaintiff avers, because Defendant engaged in fraudulent conduct. See id. ("[W]here an agent acts in his own interest and commits a fraud for his own benefit . . . the principal . . . will not be held liable for the agent's tortious act.").

Plaintiff relies on Atkinson,[6] a case in which a partner at a law firm was found to be acting outside the scope of his employment where he did not have an attorney/client

_____

5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,

6) the nonparty falls under a special statutory scheme that 'expressly foreclose[s] successive litigation by nonlitigants.'

571 F.3d 299, 312 (3d Cir. 2009). Here it is clear that the second category applies, as Defendant was an employee of the law firm. Plaintiff has no support for the claim that only general partners are in privity with their law firms.

[6]      The Court notes that Atkinson does not touch on the issue of privity, but rather discusses only vicarious liability between a lawyer and his law firm.

relationship with his partner (the plaintiff in the case) in a real estate investment project. 622 A.2d at 987. <u>Atkinson</u> is inapposite, in that here, Defendant was not acting as an investor, but was acting as Plaintiff's lawyer at all relevant times and in all relevant transactions.

Under these circumstances, Plaintiff is estopped from claiming that Defendant was not an agent of the Schnader Firm. The Third Circuit has held that federal judicial estoppel law applies in diversity cases. <u>G-I Holdings, Inc. v. Reliance Ins. Co.</u>, 586 F.3d 247, 261 (3d Cir. 2009). A court's decision to apply judicial estoppel is not subject to "inflexible prerequisites or an exhaustive formula," <u>New Hampshire v. Maine</u>, 532 U.S. 742, 751 (2001). However, the Third Circuit has stated three threshold requirements for applying the doctrine: (1) "the party in question must have adopted irreconcilably inconsistent positions"; (2) "the party must have adopted these positions in 'bad faith'"; and (3) "there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient." <u>Chao v. Roy's Const., Inc.</u>, 517 F.3d 180, 186 n.5 (3d Cir. 2008). The court has stated that application of the doctrine "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." <u>Krystal Cadillac-Oldmsobile GMC Truck, Inc. v. General Motors Corp.</u>,

337 F.3d 314 (3d Cir. 2003) (internal citations and quotations omitted).

In prior litigation, Plaintiff has consistently treated Defendant as an agent of the Schnader Firm. In fact, Plaintiff's theory in the Second Philadelphia County Litigation against the Schnader Firm was that Defendant's acts should be imputed to it. For example, in his brief in support of his appeal to the Superior Court of Pennsylvania, Plaintiff describes Defendant as "Arlin Adams ('Adams') of the Schnader firm." Appellant's Br. 7, No. 1662 EDA 2010, 2010 WL 6817570 (Pa. Super. Nov. 29, 2010). In describing "the repeated assurances by Schnader," that the 1990 transactions conformed to his requirements, Plaintiff pointed to the letter authored by Defendant in 1991. Id. at 10. Plaintiff relied heavily on the letter in arguing that the Schnader Firm engaged in fraudulent concealment. Id. at 26. Essentially, Plaintiff imputed Defendant's actions to the firm in attempting to hold it liable. To now claim that Defendant was not acting as an agent of the Schnader Firm constitutes a 180 degree turn from Plaintiff's position in previous litigation. While a party may change or modify a legal theory to meet emerging facts, the opposite is not true. Facts cannot be changed to meet new legal theories. Under the circumstances, the Court finds that the efforts to now decouple Defendant from the Schnader Firm without pointing to

any intervening facts from those asserted in the Second Philadelphia County Litigation, constitutes bad faith. Therefore, Plaintiff is judicially estopped from making such a misrepresentation to the Court on this late day.[7]

Finding that Defendant, as an employee, was in privity with the Schnader Firm, the Court holds that Plaintiff is precluded from bringing all of his claims relating to the failure to designate Alison as a beneficiary of the Trust. In the Second Philadelphia County Action, Plaintiff brought claims of breach of contract, negligence, and breach of fiduciary duty. Here, Plaintiff alleges two of the same claims but also adds claims of fraudulent misrepresentation, fraudulent concealment, and fraud. In December 2009, when Plaintiff filed his complaint in the Philadelphia Court of Common Pleas, he had already uncovered the basis for the claims of fraud relating to the creation of the Trust, which he now pursues. Therefore, though the three claims of fraud were not actually litigated in the Second Philadelphia County Action, they are nonetheless barred because they could have been brought at that time. See Elkadrawy, 584 F.3d at 174.

---

[7]    It is worth noting that even if Plaintiff were not judicially estopped from making this argument, his claim of fraud against Defendant would be time-barred for the same reasons described earlier. See subsection III.B.2. Plaintiff would not, therefore, be able to show that Defendant was acting outside of the scope of his employment.

## IV. CONCLUSION

Having determined that all of Plaintiff's claims are either time-barred or barred under the doctrine of res judicata, the Court will dismiss Plaintiff's complaint with prejudice. The dismissal will hopefully put an end to the seemingly endless litigation among members of this unhappy family involving these related claims. An appropriate order will follow.